E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BRITTNEY M. HARRIS (Cal. Bar No. 294650)
Assistant United States Attorney
Deputy Chief, International Narcotics,
Money Laundering, and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-0488
     Facsimile:  (213) 894-0141
     E-mail:    Brittney.Harris@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>PETICUB PHARMACY CORPORATION, a<br>California corporation doing<br>business as "Peticub Pet<br>Pharmacy,"<br><br>       Defendant. | No. CR 23-00375-DMG-2<br><br>PLEA AGREEMENT FOR DEFENDANT<br>PETICUB PHARMACY CORPORATION |

     1.   This constitutes the plea agreement between Peticub

Pharmacy Corporation, doing business as Peticub Pet Pharmacy,"

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authority.

///

1

<u>DEFENDANT'S OBLIGATIONS</u>

2
    2.   Defendant agrees to:

3
       a.   At the earliest opportunity requested by the USAO and

4
provided by the Court, appear and plead guilty to counts one and

5
fifteen of the indictment in <u>United States v. Rabin Shaoulian et al.,</u>

6
CR No. 23-00375-DMG-2, which charges defendant with conspiracy to

7
distribute and possess with intent to distribute tapentadol, in

8
violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C); and conspiracy

9
to (1) introduce or deliver for introduction into interstate commerce

10
adulterated and misbranded drugs, and (2) receive adulterated and

11
misbranded drugs and deliver or proffer for delivery to another, in

12
violation of 18 U.S.C. § 371, 21 U.S.C. §§ 331(a) and (c), 333(a)(2).

13
       b.   Not contest facts agreed to in this agreement.

14
       c.   Abide by all agreements regarding sentencing contained

15
in this agreement.

16
       d.   Appear for all court appearances, surrender as ordered

17
for service of sentence, obey all conditions of any bond, and obey

18
any other ongoing court order in this matter.

19
       e.   Not commit any crime; however, offenses that would be

20
excluded for sentencing purposes under United States Sentencing

21
Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

22
within the scope of this agreement.

23
       f.   Be truthful at all times with the United States

24
Probation and Pretrial Services Office and the Court.

25
       g.   Pay the applicable special assessments at or before

26
the time of sentencing unless defendant has demonstrated a lack of

27
ability to pay such assessments.

28

THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.    With respect to counts four and fifteen, recommend that defendant be sentenced to a fine of $10,000 on each count, for a total fine of $20,000.

CORPORATE AUTHORIZATION

4.    Defendant represents that it is authorized to enter into this agreement.  On or before the change of plea hearing pursuant to this agreement, defendant shall provide the USAO and file with the Court a notarized legal document(s) certifying that defendant is authorized to enter into and comply with all of the provisions of this agreement.  Such legal document(s) shall designate a company representative who is authorized to take the actions specified in

3

this agreement, and shall also state that all legal formalities for such authorization have been observed.

ORGANIZATIONAL CHANGES AND APPLICABILITY

5.    This agreement shall bind defendant, its successor entities (if any), parent companies, and any other person or entity that assumes the liabilities contained herein ("successors-in-interest"). Defendant, or its successors-in-interest, if applicable, shall provide the USAO and the United States Probation Office for the Central District of California with reasonably prompt notice of any name change, business reorganization, sale or purchase of assets, divestitures of assets, or similar action impacting their ability to pay the file or affecting this agreement.  No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter defendant's responsibilities under this agreement.  Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

RESPONDEAT SUPERIOR

6.    The parties stipulate and agree that under well-established principals of corporate liability and respondeat superior, as these principals apply in this case, defendant is liable for the actions of its agents and employees.  New York Central and Hudson River R.R. v. United States, 212 U.S. 481, 495 (1909); United States v. Beusch, 596 F.2d 871, 877-878 (9th Cir. 1979); United States v. Hilton Hotels Corporation, 467 F.2d 1000, 1004-07 (9th Cir. 1972).

1

<u>NATURE OF THE OFFENSES</u>

2      7.   Defendant understands that for defendant to be guilty of

3 the crime charged in count one, that is, conspiracy to distribute and

4 possess with intent to distribute tapentadol, in violation of 21

5 U.S.C. §§ 846, 841(a)(1) the following must be true: (1) from a date

6 unknown and ending on or about May 5, 2022, there was an agreement

7 between two or more persons to distribute or possess with intent to

8 distribute tapentadol; (2) defendant joined in the agreement knowing

9 of its purpose and intending to help accomplish that purpose; (3)

10 defendant acted outside the scope of professional practice; and (4)

11 defendant acted without a legitimate medical purpose.

12      8.   Defendant understands that for defendant to be guilty of

13 the crime charged in count fifteen, that is, conspiracy to violate 21

14 U.S.C. §§ 331(a) or (c) and 333(a)(2), in violation of 18 U.S.C.

15 § 371, the following must be true: (1) there was an agreement between

16 two or more people to violate 21 U.S.C. §§ 331(a) or (c); (2)

17 defendant became a member of the conspiracy knowing of at least one

18 of its objects and intending to help accomplish it; and (3) one of

19 the members of the conspiracy performed at least one overt act for

20 the purpose of carrying out the conspiracy.

21      9.   In order to violate 21 U.S.C. §§ 331(a), 333(a)(2), the

22 following must be true: (1) a person introduced or delivered for

23 introduction into interstate commerce; (2) any drug; (3) that is

24 adulterated or misbranded; and (4) the person acted with an intent to

25 defraud of mislead.

26      10.   In order to violate 21 U.S.C. §§ 331(c), 333(a)(2), the

27 following must be true: (1) a person received in interstate commerce;

28 (2) any drug; (3) that is adulterated or misbranded; (4) and

delivered or proffered delivery of that drug for pay or otherwise; and (5) the person acted with an intent to defraud or mislead.

PENALTIES

11.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C) is: 5 years' probation; a fine of $5,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371, 21 U.S.C. §§ 331(a), (c), 333(a)(2) is: 5 years' probation; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.[1]

13.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 5 years' probation; a fine of $5,500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

14.  Defendant understands that if the Court imposes a term of probation, that the statutory mandatory minimum term of probation is one year.

15.  Defendant understands that the conviction in this case may subject defendant to various collateral consequences.  For example, if defendant holds any regulatory license or permit, the conviction in this case may result in the suspension or revocation of such

---

[1] The applicable statute for the fine pursuant to count fifteen is 18 U.S.C. § 3571(c)(3).

1  license and/or permit.  Defendant understand that unanticipated
2  consequences will not serve as grounds to withdraw defendant's guilty
3  pleas.

4                          FACTUAL BASIS

5       16.  Defendant admits that defendant is, in fact, guilty of the
6  offenses to which defendant is agreeing to plead guilty.  Defendant
7  and the USAO agree to the statement of facts provided below and agree
8  that this statement of facts is sufficient to support pleas of guilty
9  to the charges described in this agreement and to establish the
10 Sentencing Guidelines factors set forth in paragraph 17 below but is
11 not meant to be a complete recitation of all facts relevant to the
12 underlying criminal conduct or all facts known to either party that
13 relate to that conduct.

14      At all times relevant to this plea agreement, defendant was
15 doing business as Peticub Pet Pharmacy ("defendant" or "Peticub"),
16 which was authorized by the United States Drug Enforcement
17 Administration ("DEA") to dispense controlled substances, and had a
18 pharmacy location in Los Angeles, California.  Rabin Shaolian
19 ("Shaoulian") was a pharmacy technician licensed by the State of
20 California and operated Peticub.  As the operator, employee and agent
21 of Peticub, Shaoulian was the sole manager, held the keys to
22 Peticub's pharmacy location, handled payroll and hiring, managed
23 Peticub's bank accounts, accounting, ordering of drugs and other
24 supplies for the business, among other duties.  The only other
25 Peticub employee was a part-time pharmacist, who was hired by
26 Shaoulian.  From a date unknown and continuing until on or about May
27 5, 2022, in Los Angeles County, within the Central District of

28

                                7

1  California, and elsewhere, Shaoulian engaged in an illicit pill
2  trafficking business, which was operated, in part, through Peticub.

3       Specifically, Shaoulian purchased tapentadol (a schedule II
4  controlled substance) and counterfeit alprazolam (a schedule IV
5  controlled substance) from a Nevada-based illicit pill manufacturer
6  and distributor, Christopher Housley ("Housley"), who was not
7  licensed by the DEA or the Food and Drug Administration ("FDA") as a
8  pharmaceutical manufacturer.  Shaoulian knew that Housley sourced his
9  tapentadol pills from India and Shaoulian knew that Housley
10 manufactured his own counterfeit alprazolam pills.  Along with
11 purchasing thousands of tapentadol and counterfeit alprazolam pills
12 at a time from Housley, Shaoulian also purchased from Housley empty
13 pill bottles, counterfeit alprazolam labels, and tamper proof seals.
14 Housley, from a location in Nevada, then mailed the bulk tapentadol
15 and/or counterfeit alprazolam pills, empty pill bottles, counterfeit
16 alprazolam labels, and tamper proof seals to defendant's pharmacy
17 location, in Los Angeles.  Shaoulian then made counterfeit bottles of
18 alprazolam by filling the empty pill bottles with the counterfeit
19 pills, affixing false and misbranded labels, and sealing the bottles
20 with the tamper proof seals.  Shaoulian then sold bottles of
21 counterfeit alprazolam and tapentadol pills on the black market to
22 customers throughout the United States directly or through electronic
23 orders that Shaoulian received from co-conspirators.  Shaoulian's
24 customers did not present or have prescriptions authorizing the
25 dispensation of alprazolam or tapentadol pills.  From Los Angeles,
26 Shaoulian would mail the pills directly to customers throughout the
27 United States and would charge customers through defendant's point of
28 sale system.

1     On June 21, 2021, Housley texted Shaoulian a series of

2 photographs that depicted six bottles of 2 m.g. strength alprazolam

3 bearing the logos of drug manufacturers Sandoz, Dava, and Actavis,

4 along with photographs of three types of pills, which resembled

5 alprazolam pills sold by those three pharmaceutical manufacturers.

6 Housley told Shaoulian that the white pills, counterfeited to

7 resemble the Sandoz brand alprazolam, were his "best seller."

8     The following day, Shaoulian ordered from Housley 5,000 of the

9 white counterfeit alprazolam pills, along with empty bottles, false

10 labels, and tamper proof seals, for $3,250.  Housley subsequently

11 shipped the pills, bottles, labels, and tamper proof seals from

12 Nevada to defendant at Peticub's pharmacy location in Los Angeles,

13 which was received on June 28, 2021.  Shaoulian subsequently filled

14 the pill bottles with the counterfeit alprazolam pills, affixed false

15 and misbranded labels on the bottles purporting that the bottles

16 contained 100 2 m.g. alprazolam pills manufactured by Sandoz, and

17 sealed the bottles with tamper proof seals.  At all relevant times,

18 Shaoulian knew that the pills were not authentic alprazolam pills

19 manufactured by Sandoz and knew that they were counterfeit pills that

20 Housley manufactured himself.

21     On June 30, 2021, Shaoulian messaged co-conspirator 2 a

22 photograph of a finished counterfeit alprazolam bottle and later that

23 day, co-conspirator 2 brought Shaoulian an order for 500 2 m.g.

24 alprazolam pills for customer L.T., located in Houston, Texas.  L.T.

25 did not present to co-conspirator 2 or Shaoulian with a prescription

26 authorizing the dispensation of alprazolam.  Shaoulian charged L.T.'s

27 credit card using defendant's point of sale system and mailed 500

28

counterfeit alprazolam pills (purporting to be manufactured by
Sandoz) from Los Angeles to L.T. in Texas.

Shaoulian purchased counterfeit alprazolam pills, bottles,
labels and tamper proof seals 12 more times from Housley during the
conspiracy period, totaling at least 44,200 counterfeit alprazolam
pills, which Housley shipped from Nevada to defendant's pharmacy
location in Los Angeles.  Shaoulian then re-sold (often using
defendant's point of sale system) or proffered to others for sale
those counterfeit alprazolam pills, intending to defraud and mislead
the customers into believing that the pills were authentic alprazolam
pills manufactured by Sandoz, when in fact, Shaoulian knew they were
not.  During the conspiracy period, Housley detailed his alprazolam
pill pressing methods to Shaoulian, including the specific dyes that
Housley used and how he used a coffee grinder to make the pill color
more even.  Shaoulian told Housley that he did not care what the
pills looked like or if they tasted "too chalky" and continued
purchasing them by the thousands.

Shaoulian also purchased thousands of tapentadol pills from
Housley, which were shipped to defendant's pharmacy location and
Shaoulian then re-sold them to customers.  For example, on August 24,
2021, Shaoulian purchased 1,500 tapentadol pills from Housley for
$1,000.  From Nevada, Housley shipped those pills to defendant's
pharmacy location in Los Angeles, which Shaoulian then re-distributed
to customers on the black market without prescriptions.  Shaoulian
purchased tapentadol pills 11 more times from Housley during the
conspiracy period, all of which were shipped to defendant's pharmacy
location, totaling at least 30,700 tapentadol pills.

For all counterfeit alprazolam and tapentadol transactions, defendant did not dispense the pills pursuant to any prescriptions and was not authorized by any medical professional to dispense those drugs.  For all transactions, defendant acted outside the scope of professional practice and without a legitimate medical purpose.

SENTENCING FACTORS

17.  Defendant and the USAO agree and stipulate that, pursuant to U.S.S.G. §§ 8C2.1 and 8C2.10, the sentencing guidelines are not applicable in determining the fine for an organization violating statutes related to counts one and fifteen.  Defendant understands that in determining defendant's sentence, the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence and sentencing range established under the Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

WAIVER OF CONSTITUTIONAL RIGHTS

18.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant

1  understands, however, that, defendant retains the right to be

2  represented by counsel -- and if necessary have the Court appoint

3  counsel -- at every other stage of the proceeding.

4         d.    The right to be presumed innocent and to have the

5  burden of proof placed on the government to prove defendant guilty

6  beyond a reasonable doubt.

7         e.    The right to confront and cross-examine witnesses

8  against defendant.

9         f.    The right to testify and to present evidence in

10  opposition to the charges, including the right to compel the

11  attendance of witnesses to testify.

12         g.    Any and all rights to pursue any affirmative defenses,

13  Fourth Amendment or Fifth Amendment claims, and other pretrial

14  motions that have been filed or could be filed.

15                     <u>WAIVER OF APPEAL OF CONVICTION</u>

16     19.    Defendant understands that, with the exception of an appeal

17  based on a claim that defendant's guilty pleas were involuntary, by

18  pleading guilty defendant is waiving and giving up any right to

19  appeal defendant's convictions on the offenses to which defendant is

20  pleading guilty.  Defendant understands that this waiver includes,

21  but is not limited to, arguments that the statutes to which defendant

22  is pleading guilty are unconstitutional, and any and all claims that

23  the statement of facts provided herein is insufficient to support

24  defendant's pleas of guilty.

25  <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

26     20.    Defendant gives up the right to appeal all of the

27  following: (a) the procedures and calculations used to determine and

28  impose any portion of the sentence; (b) the term of probation imposed

1  by the Court, provided it is within the statutory maximum; (c) the

2  fine imposed by the Court, provided it is within the statutory

3  maximum; and (d) to the extent permitted by law, the

4  constitutionality or legality of defendant's sentence, provided it is

5  within the statutory maximum.

6      21.  The USAO gives up its right to appeal any portion of the

7  sentence.

8      22.  Defendant also gives up any right to bring a post-

9  conviction collateral attack on the convictions or sentence, except a

10  post-conviction collateral attack based on a claim of ineffective

11  assistance of counsel, a claim of newly discovered evidence, or an

12  explicitly retroactive change in the applicable Sentencing

13  Guidelines, sentencing statutes, or statutes of conviction.

14  Defendant understands that this waiver includes, but is not limited

15  to, arguments that the statutes to which defendant is pleading guilty

16  are unconstitutional, and any and all claims that the statement of

17  facts provided herein is insufficient to support defendant's pleas of

18  guilty.

19              <u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20      23.  Defendant agrees that if, after entering guilty pleas

21  pursuant to this agreement, defendant seeks to withdraw and succeeds

22  in withdrawing defendant's guilty pleas on any basis other than a

23  claim and finding that entry into this plea agreement was

24  involuntary, then (a) the USAO will be relieved of all of its

25  obligations under this agreement; and (b) should the USAO choose to

26  pursue any charge that was either dismissed or not filed as a result

27  of this agreement, then (i) any applicable statute of limitations

28  will be tolled between the date of defendant's signing of this

agreement and the filing commencing any such action; and

(ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

24.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## EFFECTIVE DATE OF AGREEMENT

25.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

26.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO

14

may declare this agreement breached.  All of defendant's obligations
are material, a single breach of this agreement is sufficient for the
USAO to declare a breach, and defendant shall not be deemed to have
cured a breach without the express agreement of the USAO in writing.
If the USAO declares this agreement breached, and the Court finds
such a breach to have occurred, then: (a) if defendant has previously
entered guilty pleas pursuant to this agreement, defendant will not
be able to withdraw the guilty pleas, and (b) the USAO will be
relieved of all its obligations under this agreement.

27.  Following the Court's finding of a knowing breach of this
agreement by defendant, should the USAO choose to pursue any charge
that was either dismissed or not filed as a result of this agreement,
then:

a.  Defendant agrees that any applicable statute of
limitations is tolled between the date of defendant's signing of this
agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on
the statute of limitations, any claim of pre-indictment delay, or any
speedy trial claim with respect to any such action, except to the
extent that such defenses existed as of the date of defendant's
signing this agreement.

c.  Defendant agrees that: (i) any statements made by
defendant, under oath, at the guilty plea hearing (if such a hearing
occurred prior to the breach); (ii) the agreed to factual basis
statement in this agreement; and (iii) any evidence derived from such
statements, shall be admissible against defendant in any such action
against defendant, and defendant waives and gives up any claim under
the United States Constitution, any statute, Rule 410 of the Federal

15

Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
Procedure, or any other federal rule, that the statements or any
evidence derived from the statements should be suppressed or are
inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

28.  Defendant understands that the Court and the United States
Probation and Pretrial Services Office are not parties to this
agreement and need not accept any of the USAO's sentencing
recommendations or the parties' agreements to facts or sentencing
factors.

29.  Defendant understands that both defendant and the USAO are
free to: (a) supplement the facts by supplying relevant information
to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 17 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

16

30.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

31.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///
///
///
///
///
///
///
///
///
///
///
///

17

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

32.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*Brittney Harris*                          March 11, 2024

BRITTNEY M. HARRIS                          Date
Assistant United States Attorney

*Shaoulian*                                 3. 11. 2024

ESTHER SHAOULIAN, Authorized                Date
Representative of Defendant

*[signature]*                               3/11/2024

EDWARD ROBINSON                             Date
Attorney for Defendant Peticub
Pharmacy Corp.

CERTIFICATION OF DEFENDANT

I am an authorized representative of defendant Peticub Pharmacy Corp. ("defendant"). I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with defendant's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of defendant. I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set

18

1  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
2  provisions, and of the consequences of entering into this agreement.
3  No promises, inducements, or representations of any kind have been
4  made to me or to defendant other than those contained in this
5  agreement.  No one has threatened or forced me or defendant in any
6  way to enter into this agreement.  I am satisfied with the
7  representation of defendant's attorney in this matter, and I am
8  pleading guilty on behalf of defendant because defendant is guilty of
9  the charges and wishes to take advantage of the promises set forth in
10  this agreement, and not for any other reason.

11  _____            3.11.2024
12  ESTHER SHAOULIAN, Authorized           Date
   Representative of Peticub Pharmacy
13  Corp.

14

15

16              CERTIFICATION OF DEFENDANT'S ATTORNEY

17      I am Peticub Pharmacy Corporation's attorney.  I have carefully
18  and thoroughly discussed every part of this agreement with the
19  authorized representative of my client.  Further, I have fully
20  advised my client and its authorized representative of its rights, of
21  possible pretrial motions that might be filed, of possible defenses
22  that might be asserted either prior to or at trial, of the sentencing
23  factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing
24  Guidelines provisions, and of the consequences of entering into this
25  agreement.  To my knowledge: no promises, inducements, or
26  representations of any kind have been made to my client other than
27  those contained in this agreement; no one has threatened or forced my
28  client in any way to enter into this agreement; my client's decision

                              19

1  to enter into this agreement is an informed and voluntary one; and

2  the factual basis set forth in this agreement is sufficient to

3  support my client's entry of  guilty pleas pursuant to this

4  agreement.

5

6  EDWARD ROBINSON                          Date
   Attorney for Defendant Peticub
7  Pharmacy Corp.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28